Frances G. Troy v. Commissioner.
Frances G. Troy v. Commissioner
Docket No. 44013.
United States Tax Court
T.C. Memo 1954-88; 1954 Tax Ct. Memo LEXIS 159; 13 T.C.M. (CCH) 618; T.C.M. (RIA) 54193; June 30, 1954, Filed *159 William S. Duke, Esq., 801 First National Bank Building, Montgomery, Ala., for the petitioner. Homer F. Benson, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies of $149 and $152 in petitioner's income tax for the years 1948 and 1949. The issue for each of these years is whether petitioner is entitled to a certain bad debt deduction. Findings of Fact Petitioner, a resident of Montgomery, Alabama, filed her individual income tax returns for the years before us with the collector of internal revenue for the distract of Alabama. In 1926 petitioner was divorced from her husband and was given custody of their five-month old child. Petitioner's husband was ordered to pay her $50 a month for the support of their child. Despite numerous requests by petitioner, her former husband never paid her any money for the support of their child. From time to time petitioner's former father-in-law gave her financial assistance, but in early 1944 he became ill and could no longer continue his contributions for her support. In 1945 and 1946 petitioner earned between $100 and $140 a month as an Alabama state *160 employee. At one time prior to 1940 petitioner sought money from her former husband through the Juvenile Court. Even though she was unsuccessful, she did not have him put in jail. In 1944 petitioner was the sole beneficiary of a trust she had created from her own property, and she thought that this trust was irrevocable. The First National Bank of Montgomery, Alabama, was trustee. Petitioner's former husband was in the pulpwood distribution business, and in 1944 he needed money or his business. He asked petitioner to assign the trust for his benefit because he could then use it as security for a loan from the Montgomery Loan and Finance Company. Petitioner, believing that the trust agreement was irrevocable and that the trust assets could not be reached or applied to payment of the indebtedness which Daniel W. Troy owed the Montgomery Loan and Finance Company, made an assignment of the trust assets to that company to secure her husband's debt. She would not have done so had she thought the trust was revocable and that her assignment would be effective and make the assets liable for her former husband's indebtedness. Petitioner's former husband failed to pay the loan to the *161 Montgomery Loan and Finance Company, and when the latter sought payment from the trust assets petitioner resisted on the ground that the trust was irrevocable. But the Circuit Court of Montgomery County, Alabama, held the trust to be revocable and the trust assets pledged by petitioner subject to the debt, and petitioner's trust assets were then applied to a partial payment of her former husband's debt to the Montgomery Loan and Finance Company. Immediately after his default, petitioner's former husband left Montgomery for Birmingham, Alabama, and shortly thereafter he moved to New York. Petitioner testified that she had been advised by counsel that she could not recover anything from him. Petitioner claimed that this transaction entitled her to a bad debt deduction. Under section 23(k), I.R.C., she deducted $1,000 in 1944, 1945, 1946, 1947, 1948 and 1949. The notice of deficiency was issued for the last two years. Respondent's explanation for the adjustments to petitioner's income is as follows: "From the information which you have furnished you have stated that no collateral was given you by your former husband to secure you against the risk in pledging *162 your trust and further that no efforts were made by you to collect the amount lost. Therefore, from this information it would not be shown that the debtor-creditor relationship existed nor that the proper steps were taken to collect the amount of the indebtedness due to this pledging of the trust as collateral and therefore, this deduction would not qualify as a bad debt deduction under Section 23(k) of the Internal Revenue Regulations. We are, therefore disallowing this deduction in the amount of $1,000.00. "This disallowance and recomputation of your tax results in a tax deficiency of $149.00 plus interest of $31.29 or a total of $180.29." Opinion Petitioner contends that she is entitled to a bad debt deduction under section 23(k). [1] Respondent his disallowed the deduction for 1948 and 1949, contending, first, that there was not a bona fide indebtedness, and, as an alternate contention, that petitioner did not reasonably expect repayment *163 The record developed in this proceeding is wanting in many respects. We received no evidence other than the sole testimony of the petitioner at a thirty-five minute hearing. Part of this time was devoted to statements of counsel, and a good portion of petitioner's testimony was directed to her personal financial problems. Briefly, the facts are that she made some agreement in regard to a loan for her former husband. Petitioner testified somewhat vaguely that her assets in 1944 were diminished by $8,000, $9,000 or $10,000 as the result of the agreement. She said that she had been advised by counsel that she could not recover any money from her former husband. Petitioner then made certain deductions for a nonbusiness bad debt. Respondent adjusted her income for 1948 and 1949 by disallowing the deductions. If petitioner is to prevail she must prove that she was a bona fide creditor and that the debt became "worthless during the taxable year." First, we do not know the value of petitioner's trust. At different times during the hearing the trust was said to be worth $8,000, $9,000 or $10,000. Therefore we do not know the proper value of the alleged debt. Next, what kind of a trust *164 was it? We have no way of knowing; nor do we know now it was used in the transaction with petitioner's former husband. Maybe the assignment was a gift; maybe petitioner received some consideration; or maybe she did it as an accommodation. We do not know. Furthermore, the evidence raises a serious question as to whether a bona fide relation of debtor-creditor was established by petitioner's assignment of the trust assets. She testified that at the time she assigned them she thought the trust was irrevocable, and hence her assignment would be of no effect; otherwise she would not have made the assignment. Even if we assume that petitioner were a bona fide creditor, when did the debt become worthless? Did it ever have value? From the evidence it can be inferred that not only was petitioner's former husband unresponsible for his moral obligations, but also he lacked economic resources for his current debts. This might indicate that the alleged debt was worthless when she first entered into the transaction. Furthermore, after his default what did petitioner actually do to determine if she could recover anything on the alleged debt? She testified that she talked to some attorneys. *165 This might have been enough but we do not know what action was taken or what investigations were made by the attorneys. We doubt that worthlessness has been proved. See Ray Crowder, 19 T.C. 329. As deserving as petitioner may be, she has failed to meet her burden of proof and under the law and the evidence respondent must be sustained. Decision will be entered for the respondent Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (k)Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; * * *
(4) Non-Business Debts. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt "means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩